90 Cal.Rptr.2d 691 (1999)
76 Cal.App.4th 739
Kenneth L. BUTTS, Plaintiff and Appellant,
v.
Stephen P. SANDS, as Executive Director, etc., Defendant and Respondent.
No. B125488.
Court of Appeal, Second District, Division One.
December 1, 1999.
Review Denied March 15, 2000.[*]
*692 Law Offices of Abdulaziz & Grossbart, Sam K. Abdulaziz and Bruce D. Rudman, North Hollywood, for Plaintiff and Appellant.
*693 Bill Lockyer, Attorney General, and Reginald Rucoba, Deputy Attorney General, for Defendant and Respondent.
MASTERSON, J.
Business and Professions Code section 5586, which became effective on January 1, 1995, provides: "The fact that the holder of a license has had disciplinary action taken by any public agency for any act substantially related to the qualifications, functions, or duties as an architect constitutes a ground for disciplinary action." (Stats.1994, ch. 258, § 2; unless otherwise specified, further statutory references are to the Bus. & Prof.Code.) Pursuant to this statute, respondent California Board of Architectural Examiners (hereafter "the California Board") sought revocation of the architect's license of appellant Kenneth Butts on the ground that discipline had been imposed on Butts in other jurisdictions in 1993, 1994, 1995 and 1996, all based on a single act of misconduct committed in 1993.
Butts argued that the prior discipline could not be used against him because his misconduct occurred before section 5586 took effect. An administrative law judge disallowed use of the 1993 and 1994 foreign disciplinary orders, but found that the 1995 and 1996 orders provided a sufficient basis for disciplining Butts in California. We find that the presumption against retroactive application of new laws barred use of all of the foreign disciplinary orders. Accordingly, we reverse the judgment of the trial court, which rejected Butts's challenge to the California Board's imposition of discipline on him.

BACKGROUND
In February 1997, the California Board filed an accusation seeking revocation or suspension of Butts's California architect's license "under section 5560[1] in conjunction with section 5586." The grounds alleged were that discipline had previously been imposed on Butts by the architectural licensing agencies of Kentucky, Nevada, Montana, Kansas and Ohio, and that the discipline imposed was substantially related to the qualifications, functions and duties of an architect. Following a contested hearing, an administrative law judge found the following essentially undisputed facts:
As of June 1997, Butts was 73 years old. He received his California architect's license in 1963, and had thereafter become licensed in all 50 states and in the District of Columbia, working primarily on projects involving malls and shopping centers. His practice is centered in California.
In August 1993, the Kentucky State Board of Examiners and Registration of Architects filed a complaint accusing Butts of violating Kentucky law by signing plans for a motel project that had been prepared by a structural engineer who was not a licensed architect.[2] Butts had personally reviewed the plans before approving them and was not aware at that time that his conduct was improper. No allegations were made that the plans or the resulting building were in any way defective. Butts entered into a settlement agreement with the Kentucky Board in November 1993. *694 Pursuant to the agreement, he neither admitted nor denied the truthfulness of the allegations of the complaint. However, he consented to the suspension of his Kentucky architect's license through its period of expiration, and further agreed that he would not seek renewal of the license.
In September 1994, Butts entered into a settlement with the Nevada State Board of Architecture whereby his Nevada architect's license was revoked. The basis of the Nevada Board's action was "information received alleging violation of Kentucky law and revocation of an NCARB [National Council of Architectural Registration Board] license."
In August 1995, an order of the Board of Architects of the State of Montana was entered against Butts by default. The order recited that Butts's NCARB certification had been revoked in 1994 "based on discipline imposed in Kentucky and Nevada resulting in [Butts's] loss of license in both those states." Butts was found in violation of Montana professional standards for representing the work of others as his own and for having his license suspended or revoked by another state. Accordingly, Butts's Montana architect's license was revoked.
In November 1995, the Kansas State Board of Technical Professions ordered Butts to surrender his architect's license. The action was a result of Butts's default in the face of a complaint that his license had been suspended or revoked in Kentucky, based on his having signed plans that had been prepared by someone other than himself.
In September 1996, following a hearing at which Butts personally appeared, the Ohio State Board of Examiners of Architects revoked Butts's license. The basis of the order of revocation was the discipline imposed in 1995 by the State of Montana.
The administrative law judge below found that the presumption against retroactive application of statutes precluded the California Board from imposing discipline on Butts pursuant to section 5586 based on the disciplinary orders entered in Kentucky in 1993 and in Nevada in 1994. However, the judge further found that the presumption did not bar the imposition of discipline in California based on the discipline imposed in Montana, Kansas, and Ohio in 1995 and 1996. In January 1998, the California Board adopted the administrative law judge's findings and revoked Butts's license for three years. The revocation was stayed pending successful completion of three years probation, and Butts was suspended from practicing architecture for a period of 90 days.
In February 1998, Butts filed a petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. Following a hearing, the trial court denied the petition in a written order that set forth reasons similar to those stated by the administrative law judge. On July 31, 1991, the trial court issued a statement of decision and filed a judgment denying Butts's petition.[3] Butts thereafter filed a timely notice of appeal.

STANDARD OF REVIEW
Where, as here, "the order or decision of the agency substantially affects a fundamental vested right, the trial court, in determining under [Code of Civil Procedure] section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment...." (Strumsky v. San Diego County Employees Retirement Assn. (1974) 11 Cal.3d 28, 32, 112 Cal.Rptr. 805, 520 P.2d 29.) "Where a superior court is required to make such an independent *695 judgment upon the record of an administrative proceeding, the scope of review on appeal is limited. An appellate court must sustain the superior court's findings if substantial evidence supports them. [Citations.]" (Pasadena Unified Sch. Dist. v. Commission on Professional Competence (1977) 20 Cal.3d 309, 314, 142 Cal.Rptr. 439, 572 P.2d 53.) "An appellate court will reverse a trial court's decision not only when the trial court's decision is not supported by substantial evidence, but also when the trial court's decision is based on an erroneous conclusion of law. [Citation.]" (Kazensky v. City of Merced (1998) 65 Cal.App.4th 44, 53, 76 Cal.Rptr.2d 356.) "The interpretation of ... statutory provisions is a question of law. [Citation.] `"When the facts do not conflict and the issues involve proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. [Citation.]" [Citation.]' [Citation.]" (Borden v. Division of Medical Quality (1994) 30 Cal.App.4th 874, 879, 35 Cal.Rptr.2d 905; accord, Clare v. State Bd. of Accountancy (1992) 10 Cal.App.4th 294, 300, 12 Cal.Rptr.2d 481.)

DISCUSSION
We are called upon to interpret Business and Professions Code section 5586. "Our analysis commences with the premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citation.] `"Our first step [in determining legislative intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning."' [Citations.] `"In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose...."' [Citation.] `Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction.' [Citations.] [¶] [¶] A statute is regarded as ambiguous if it is capable of two constructions, both of which are reasonable. [Citations.] [¶] When ... a statute is ambiguous, we typically consider evidence of the Legislature's intent beyond the words of the statute. The court may examine a variety of extrinsic aids, including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality, `in an attempt to ascertain the most reasonable interpretation of the measure.' [Citations.]" (Hughes v. Board of Architectural Examiners (1998) 17 Cal.4th 763, 775-776, 72 Cal.Rptr.2d 624, 952 P.2d 641.)
In resolving the question of whether section 5586 may be used to impose discipline on the basis of previous discipline that was, in turn, based on conduct occurring before the statute took effect, we are called upon to address two intertwined questions of statutory interpretation: Is section 5586 ambiguous in the sense that it does not specify whether the fact of discipline may be predicated on conduct that occurred before the statute was enacted; and if so, should the statute be interpreted to apply retroactively? We find the statute to be ambiguous and interpret it to preclude retroactive application in this case.
"It is settled ... that no statute is to be given retroactive effect unless the Legislature has expressly so declared and that this rule is not limited by a requirement that a statute be liberally construed to effect its objects and promote justice." (DiGenova v. State Board of Education (1962) 57 Cal.2d 167, 174, 18 Cal. Rptr. 369, 367 P.2d 865; accord, In re Marriage of Bouquet (1976) 16 Cal.3d 583, 592, 128 Cal.Rptr. 427, 546 P.2d 1371; Fox v. Alexis (1985) 38 Cal.3d 621, 627, 214 Cal.Rptr. 132, 699 P.2d 309.) "`A statute is retroactive if it substantially changes the legal effect of past events. [Citations.] A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. [Citations.]' [Citation.]" (Borden v. Division *696 of Medical Quality, supra, 30 Cal. App.4th at pp. 879-880, 35 Cal.Rptr.2d 905.) "The source of the presumption [against retroactivity] is the `general consensus that notice of warning of the rule should be given in advance of the actions whose effects are to be judged.' [Citation.] Application of a statute is retroactive only when it gives a different and potentially unfair legal effect to actions taken in reliance on the preenactment law. [Citation.]" (California Trout, Inc. v. State Water Resources Control Bd. (1989) 207 Cal.App.3d 585, 609, 255 Cal.Rptr. 184.)
The presumption against retroactivity was applied in the proceedings below with respect to events occurring before the enactment of section 5586, i.e., the discipline imposed by the States of Kentucky and Nevada. The California Board does not take issue with this limitation. However, it asserts that principles of retroactivity are not implicated with respect to the discipline imposed in Montana, Kansas and Ohio because the "plain language" of section 5586 permits it to impose discipline based on the "fact" that discipline was previously imposed in other states, irrespective of the timing of the conduct on which the discipline was based. (See Marek v. Board of Podiatric Medicine (1993) 16 Cal.App.4th 1089, 1096-1097, 20 Cal. Rptr.2d 474 [under section 2305, which provides that discipline by another state related to the practice of medicine "constitute] grounds for disciplinary action for unprofessional conduct" in California, podiatrist was properly disciplined in California based solely on the fact that a disciplinary order was entered against him in Nevada]; Clare v. State Bd. of Accountancy, supra, 10 Cal.App.4th at p. 301, 12 Cal. Rptr.2d 481 [although section 5100, subdivision (g), does not state that foreign discipline must be related to accountant's professional qualifications in order to provide a basis for discipline in California, statute must be read to contain such requirement].) We find nothing in the "plain language" of section 5586 which addresses, let alone refutes, the presumption against retroactivity.
"[T]he enactment of section 5586 was motivated by a need for efficient use, when appropriate, of the disciplinary determination of another agency similarly authorized in another jurisdiction...." (Hughes v. Board of Architectural Examiners, supra, 17 Cal.4th 763, 783, fn. 7, 72 Cal.Rptr.2d 624, 952 P.2d 641.) However, we are not aware of any law or policy that would permit this need for efficiency to trump the presumption against retroactivity. As stated by Sutherland, "[i]t is a fundamental principle of jurisprudence that retroactive application of new laws is usually unfair. There is a general consensus that notice or warning of the rule should be given in advance of the actions whose effects are to be judged." (2 Sutherland, Statutory Construction (5th ed. 1993) § 41.02, p. 341, fn. omitted.)
In 1993, when Butts entered into the settlement by which he agreed to accept discipline in Kentucky, Butts was no doubt legally responsible for knowing that he was subjecting himself to a domino effect of further discipline in those jurisdictions where discipline-based-on-prior-discipline statutes were then in effect. Significantly, the state in which Butts's practice is based (i.e., California) was not one of these jurisdictions. The facile reading of section 5586 suggested by the California Board would change the rules midstream. It may well be that Butts, who toward the end of his career appears to have had little interest in practicing in states other than California, made the decision to accept Kentucky discipline without fighting the charges because he knew that the mere fact that discipline was being imposed in Kentucky was irrelevant in California. We do not believe that in passing section 5586 the Legislature could have intended for someone in Butts's position to have such eminently reasonable reliance on the *697 then-current state of the law thwarted by a later change.[4]
Based on the foregoing, we conclude that section 5586 must be read to require that the foreign discipline which provides a basis for California discipline be predicated on conduct that occurred (and discipline that was imposed) after the effective date of the statute. As such, the trial court erred in concluding that the discipline imposed on Butts in Montana, Kansas and Ohio could provide a valid basis upon which to impose discipline in California.

DISPOSITION
The judgment is reversed. Appellant Butts is to recover costs on appeal.
SPENCER, P.J., and ORTEGA, J., concur.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of Court  Rules 976 and 977).
[1] Section 5560 provides in pertinent part that the California Board may suspend or revoke the license of "any architect who is guilty of, or commits one or more of, the acts or omissions constituting grounds for disciplinary action under this chapter [i.e., § 5500 (Architecture) et seq.]."
[2] Kentucky Revised Statutes, section 323.120(l)(f), permits an architect to be disciplined for "[s]igning or affixing his seal to any plans, prints, specifications of buildings, or reports, which have not been prepared by him personally or by his employees under his supervision." The Kentucky complaint against Butts alleged that "the architectural work for the Super 8 Motel, South Williamson, Pike County, Kentucky was prepared by someone other than yourself [Butts] or your employees under your supervision, and that you signed or affixed your seal to the plans, prints, or specifications of buildings or reports for this motel in violation of [K.R.S. § 323.120(l)(f)]."
[3] The trial court, as had the administrative law judge, further rejected Butts's argument that the "substantial relationship" required by section 5586 had not been shown. Additionally, the trial court denied Butts's objections to its statement of decision. On appeal, Butts contends that these rulings were erroneous. Given our conclusion that retroactive application of section 5586 was improper, we need not discuss these contentions.
[4] Murrill v. State Board of Accountancy (1950) 97 Cal.App.2d 709, 218 P.2d 569, which the California Board raised for the first time at oral argument, is factually and legally distinguishable. Mr. Murrill "was convicted of [tax evasion] after the effective date of the [California] State Accountancy Act and his license was revoked because of that conviction." (Id. at p. 714, 218 P.2d 569, italics added.)