[Civ. No. 10273. First Appellate District, Division One.—November 18, 1936.]

WILLIAM GLASS, as Finance Commissioner, etc., Plaintiff, v. CITY OF FRESNO (a Municipal Corporation) et al., Respondents; THE CHURCH COMPANY (a Corporation), Appellant.

Lawrence W. Young for Appellant.

Claude L. Rowe for Respondents.

McNUTT, J., *pro tem.*

Having become dissatisfied with, as insanitary, the collection and disposal of garbage by private enterprise, the City of Fresno decided to itself undertake the work as a governmental activity. After it had embarked upon the performance of this service suit was instituted by William Glass, as Finance Commissioner of the city, against the municipality and other defendant respondents to enjoin further work and to vacate the proceedings. The Church Company, a corporation, appellant here, as a taxpayer moved the trial court for an order setting aside the judgment, and to be made a party to the suit, and it has appealed from the order of the trial court, to the end that the judgment rendered herein may be vacated.

Fresno, as a city, operates under a charter, section 108 whereof requires that, before the city may establish, acquire or operate a public or a *quasi*-public utility, an ordinance must be enacted by the affirmative vote of four members of the commission and be submitted to the electors of the city for its affirmance. The main contention made on this appeal is that the collection and disposal of garbage by a city constitutes the acquisition and operation of a public or a *quasi*-public utility, and that in such work the municipality is not acting in the performance of a governmental function. The city, having resolved that garbage collection was a governmental function, and not the prosecution of work by it as a public utility, omitted to take the steps prescribed by the charter in the latter behalf, but merely, by a resolution and ordinance about to be adverted to, undertook to collect garbage in its governmental capacity rather than to permit the work to be further continued by the private enterprise.

In March, 1934, the city commission adopted a resolution favoring municipal ownership of garbage disposal and directing its proper officials to take over that work at the expiration of the then existing franchise. Some months of research followed with a view of ascertaining the best method of collection and disposal of garbage. After the city had refused to purchase the records and equipment of the old concern because it regarded the price demanded excessive, it

adopted Resolution No. 825 and Ordinance No. 2078 which provide, in substance: Resolution No. 825, that public health and safety require the city to exclusively handle the disposition of the garbage, and declaring the intention of the city to exclusively dispose of the same within the city limits, in its governmental capacity. It is recited that the method theretofore in operation had proved unsatisfactory and detrimental to the health and welfare of the city, in that large accumulations of garbage and rubbish had caused influx of rats and other disease carrying rodents, and that the proper sanitation of the city required that it collect and dispose of garbage. After such steps had been taken as were necessary to permit the city to dispose of garbage as a governmental enterprise— and those additional steps having been omitted which were necessary in the event such work was a utility rather than a governmental function—the City Commissioner brought suit in the superior court to halt the operations, urging, as ground of illegality, that the commission, in voting to do the work, had not secured the vote of four members thereof in the enactment of the ordinance, and that thereafter no election of the electors of said city was held to approve the collection and disposal of garbage by the city.

The argument advanced against the method pursued is, in the main, that the city had gone into this work for a profit, and hence, was not acting in its governmental capacity, but was acting as a utility, and to show that it was engaged in a profitable enterprise evidence of the receipts and disbursements of the private company was received, from which it appeared, so says the appellant, that the private concern had made 9 per cent plus upon a capital investment of $96,881.24, and that since the city had been authorized to expend $40,000 upon its equipment, it would be profiting to the extent of some 20 per cent on its invested capital.

At the conclusion of the trial the court found: 1, that the city intended to collect a fee for collection; 2, that it was not true that the city was going to operate the system for profit; 3, that the city intended to operate the garbage collection system in its governmental capacity.

If it appears that a municipality may, as a matter of law, collect garbage in the exercise of a governmental function, and that there was evidence before the trial court sufficient to sustain the findings above set forth, it would

seem that, upon the merits, the judgment below should be sustained. It is well settled in this state that in collecting garbage, trash and similar refuse and disposing of the same a municipality exercises a governmental function. (*Pittam* v. *City of Riverside,* 128 Cal. App. 57 [16 Pac. (2d) 768].) "In the collection and disposal of garbage a municipal corporation exercises governmental functions." (*Miller* v. *City of Palo Alto,* 208 Cal. 74 [280 Pac. 108].) To the same effect is *In re Santos,* 88 Cal. App. 691 [264 Pac. 281]. It has further been held that the authority of a city to perform such work is derived from section 11 of article XI of the state Constitution. (*In re Zhizhuzza,* 147 Cal. 328 [81 Pac. 955]; *In re Pedrosian,* 124 Cal. App. 692 [13 Pac. (2d) 389].)

No citation of authority is necessary, though, of course, they are multitudinous, to establish that the collection and disposal of garbage are matters so intimately connected with the preservation of public health that the regulation thereof is the proper exercise of police power, and it would naturally follow as a corollary thereto that it would have the right to dispose of garbage itself, and it has been so held.

The ordinance pursuant to which this garbage collecting is undertaken provides that the city is to act in a governmental capacity, and, further, that, while certain fees are to be charged for the work, free collection of 60 cubic yards of rubbish monthly from its customers was provided for, which would be an extra cost to the city of not less than $10,000 a year.

The evidence in the case disclosed, through the examination of Mr. Glass, that the private company lost $29,000, more or less, the first nine months of its operation. In the franchise of the private company there was no provision for free collection of any rubbish such as is found in Ordinance No. 2078 (reporter's transcript, page 49, lines 23–26); and that the cost to the city of the free collections would be at least $10,000 a year. (Reporter's transcript, page 91, lines 1–4, and lines 13–22.) The testimony of Mr. Glass, the plaintiff, further reveals that, upon starting this work, the city would, of course, be embarking upon a new enterprise, without any customers and without buying out the operating company, that it would be starting out just as had the Fresno disposal company, its predecessor, when "they lost $29,000

in the business." (Reporter's transcript, page 194, lines 11–19.) In short, Mr. Glass testified that "financially and otherwise we will have disaster". (Reporter's transcript, page 195, lines 13–22.)

That the trial court was justified in making the findings which appellant claims are without support in the evidence seems apparent from the following considerations: It can hardly be said that the city was undertaking the collection of garbage for profit in the face of the recitals in the ordinance that it was about to do the same in its governmental capacity. It is alleged in the answer as well that the city intended to collect "and dispose of garbage within the city of Fresno as a governmental function" (Clerk's transcript, page 19, lines 5–8), the trial court finding "that said Resolution No. 825 and said Ordinance No. 2078 set forth in detail the manner in which the City of Fresno, a municipal corporation, will collect and/or dispose of garbage within the City of Fresno as a governmental function". (Clerk's transcript, page 44, lines 8–12.) The trial court found "the court finds that it is untrue that said City of Fresno intends to and/or is going to collect and/or dispose of . . . garbage for profit". (Clerk's transcript, page 40, lines 24–26.) It is not pointed out by appellant wherein the evidence does not sustain the findings of the trial court, and this burden rests upon it. (2 Cal. Jur. 730.)

The argument is advanced that, notwithstanding the resolution and ordinance adverted to, it was the purpose of the commission to collect garbage for profit. The legislative enactments themselves contain recitals to the contrary, and there is evidence to the contrary, and it seems to be settled law that considerations which motivated municipal corporations to pass ordinances will not be impugned or inquired into (43 C. J. 297). "Nor can an ordinance be declared invalid because of the bad motives . . . of the legislative body which enacted it." *Ex parte Sumida*, 177 Cal. 388 [170 Pac. 823], where it is held, among other things, that "the title of the ordinance declares, and its terms show . . . its purpose. . . . There may have been other designs in the minds of the Board of Trustees of the town in adopting the ordinance. But that question cannot be inquired into in this manner, nor can an ordinance be declared invalid because of the bad motives of the members

of the legislative body which enacted it''. Further it is held there can be no intent, not expressed in words, and no intent upon the part of the framers of an ordinance which does not find expression in their language. (*Ex°parte Goodrich,* 160 Cal. 410 [117 Pac. 451, Ann. Cas. 1913A, 56] ; 18 Cal. Jur. 927 ; 43 C. J. 570.) Where ordinances or by-laws have been enacted pursuant to competent authority they will be supported by every reasonable intendment, and reasonable doubts as to their validity will be resolved in their favor. Courts are bound to uphold municipal ordinances and by-laws unless they manifestly transcend the powers of the enacting body. (43 C. J. 570; *Ex parte Haskell,* 122 Cal. 412 [44 Pac. 725, 32 L. R. A. 527] ; *In re Bruce,* 54 Cal. App. 280 [201 Pac. 789].) The power to regulate the collection of garbage comes directly from section 11 of article XI of the state Constitution. (*In re Zhizhuzza, supra.*) This provision is self-executing and contains a direct grant of power.) (*Denton* v. *Vann,* 8 Cal. App. 677 [97 Pac. 675].) The charter of Fresno could not in any manner detract from such power. (5 Cal. Jur. 576.) Because the city charges a fee and it may be hence argued that some incidental revenue would come to the municipality does not convert the ordinance into a revenue measure. (*Cornelius* v. *City of Seattle,* 123 Wash. 550 [213 Pac. 17].) Collection and disposal of refuse gathered by the city resulting in some small incidental revenue creates no municipal liability. (*Scibilia* v. *Philadelphia,* 279 Pa. 549 [124 Atl. 273, 32 A. L. R. 981].)

In a word, the evidence elicited from the plaintiff who had urged, among other things, that the collection of garbage was to be undertaken for profit and that no submission to the electors of the city had been undertaken, as is necessary for the institution of a utility, to wit: that disaster, financial and otherwise, would result from the enterprise, justifies the findings which have been hereinabove set forth.

█ The plaintiff has not appealed, but counsel for appellant, former attorney for plaintiff, seeks to reverse the judgment below because the trial court denied the right of the taxpayer to interpose as a party, and denied, as well, his prayer that the proceedings looking toward the collection be vacated. In this behalf it may be said that if, upon the merits of the case as the same were developed by the immediate parties to the suit, it appears that the city had in

a legal manner, and in the exercise of a governmental function, undertaken the collection of garbage, and that in so doing it was in all respects within the law, the presence or absence of the taxpayer appellant from the litigation becomes inconsequential.

The record (Clerk's transcript, pages 48 and 49) shows that appellant challenges the judgment: (a) insufficiency of the evidence to justify the decision and judgment; (b) the decision and judgment as against the law. The case of *City of Madera* v. *Black,* 181 Cal. 306 [184 Pac. 397], relied upon by appellant, involves a situation in which the city was denied the right to conduct a sewage system for profit, the reasoning of that case being that, since all persons in the tax unit were not receiving sewer service, the profits derived from the service and paid by the few taxpayers went into the general revenues of the city, and, hence, lightened the tax burdens on those who did not pay for sewer service. The circumstances of differentiation of the Madera and the instant cases are that the evidence before the trial court warranted the findings that the city was not collecting garbage for profit, that not only such was not its purpose, but that profit or an enhancement of the general revenues at the expense of some that were not receiving the service did not result.

The judgment should be and therefore is affirmed.

Tyler, P. J., and Knight, J., concurred.